IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 04-cv-00860-WDM-PAC

ROBERT ALWARD,

    Plaintiff,

v.

VAIL RESORTS, et al.,

    Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on Defendants Vail Resorts, Inc., The Vail Corporation, Inc. d/b/a Vail Associates Inc., VR Holdings, Inc., and William Jensen's ("Jensen") (collectively "Vail") motion for summary judgment, filed June 16, 2005. I have reviewed the parties' written arguments and summary judgment evidence and find that oral argument is not required. For the reasons that follow, Vail's motion will be granted in part.

### Background[1]

In 1979, Alward began working for Vail as a ski instructor, and continued working for the company until 2001. Earning multiple promotions throughout his career, Alward eventually took over as the director of two of Vail's ski schools in 1997.

---

[1] Unless otherwise noted, the background facts, drawn from the parties' various filings and supporting evidence, appear to be undisputed.

In 2001, however, Vail decided to restructure its ski schools, and Alward was forced to either sign a Separation Agreement or be demoted. Alward chose to sign the Separation Agreement, which generally provided that Vail would pay Alward $70,000 in exchange for Alward's release of any claims he may have against Vail. In addition, the Separation Agreement provided that after September 11, 2002, if Alward wished to apply for employment with Vail, he would "be considered the same as any other applicant." (Separation Agreement at 3, ¶5(e), Ex. A-3 to Defs.' Motion for Summary Judgment on All Claims, Docket No. 245)

In the summer of 2002, Alward sought to be hired as a ski instructor for the upcoming ski season (beginning in September 2002). After Vail decided not to rehire him, Alward brought this suit alleging nine claims: (1) national origin discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and Colo. Rev. Stat. § 24-34-402; (2) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, and Colo. Rev. Stat. § 24-34-402; (3) breach of contract; (4) discrimination with the intent to interfere with employee benefit plans, in violation of section 510 of ERISA; (5) refusal to provide employee benefit plan documents, in violation of sections 101, 502(c)(3), and 606 of ERISA; (6) denial of coverage and benefits under employee benefit plans, in violation of section 502 of ERISA; (7) defamation; (8) intentional interference with prospective business advantage; and (9) workers compensation retaliation. In response, Vail countersued for breach of contract. In this motion, Vail seeks summary judgment on all of Alward's claims.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores*, Inc., 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

A plaintiff alleging employment discrimination may prove intentional discrimination directly or indirectly. In the absence of direct evidence, the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), provides the framework for assessing indirect, or circumstantial, evidence. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000); *see generally St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-08 (1993); *McDonnell Douglas*, 411 U.S. at 802-04.

Under the *McDonnell Douglas* framework, plaintiffs bear the initial burden of presenting a prima facie case of discrimination. *Kendrick*, 220 F.3d at 1226. The essential purpose of the prima facie test is to eliminate "the most common

nondiscriminatory reasons for the plaintiff[s'] rejection."  *Id.* at 1227 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)); *see also St. Mary's*, 509 U.S. at 506 (prima facie case "in effect creates a presumption that the employer unlawfully discriminated against the employee") (quoting *Burdine*, 450 U.S. at 254).  If plaintiffs establish a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action.  *Kendrick*, 220 F.3d at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the defendant presents such a reason, plaintiffs bear the "ultimate burden" of showing that these proffered reasons are a pretext for unlawful discrimination.  *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000).

To show pretext, a plaintiff must demonstrate that the defendant was more likely motivated by a discriminatory reason or that its proffered reason "is unworthy of credence."  *Id.* (quotation omitted); *see Kendrick*, 220 F.3d at 1230 (outlining three common ways of showing pretext:  (1) evidence that the defendant's stated reason for the adverse action was false; (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or practice when making the adverse decision).

## Discussion

### 1. Age Discrimination

Vail first argues that Alward released his age discrimination claim when he signed the Separation Agreement in 2001.  I disagree.  The Separation Agreement only

applies to claims which arose prior to the time it was executed (Separation Agreement at 2, Ex. A-3 to Defs.' Motion for Summary Judgment on All Claims, Docket No. 245), and Alward's age discrimination claim did not arise until he was denied a ski instructor job in 2002.

Moreover, even if the Separation Agreement did apply to this claim, genuine factual disputes would prohibit summary judgment. As I discussed in my March 31, 2006 order, a jury could reasonably conclude that Vail materially breached the Separation Agreement when it rejected Alward's 2002 application. Such a conclusion would release Alward from his agreement not to sue. Therefore, summary judgment based upon the parties' contractual agreement is not appropriate.

Second, Vail argues that it is entitled to summary judgment because it terminated Alward for non-discriminatory reasons (*see* Jensen Dep., Ex. A-5 to Defs.' Motion for Summary Judgment on All Claims, Docket No. 245), because Alward cannot demonstrate pretext,[2] and because he has no evidence to support his age discrimination claim. In response, Alward argues that his evidence either demonstrates pretext or is at least sufficient to survive summary judgment under a mixed motive theory.[3]

---

[2] The parties do not question whether Alward can make out a prima facie case on this issue or whether Vail has met its burden of articulating legitimate non-discriminatory reasons for its decision.

[3] In general, in a mixed motive case, a jury is allowed to find an employer liable for discrimination if the jury finds that a prohibited discriminatory motive was a motivating factor in an adverse employment decision, even if the employer would have made the same decision in the absence of the discriminatory motive. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

Alward's reliance upon mixed motive theory raises the issue of whether the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), requires me to deviate from this circuit's established precedent regarding the *McDonnell Douglas* framework. In *Desert Palace*, the Supreme Court unanimously held that a plaintiff need not present direct evidence of discrimination to be entitled to a mixed motive instruction. Notably, the *Desert Palace* Court never mentions *McDonnell Douglas*. Nonetheless, some courts have concluded that the case implicitly requires some modification of the *McDonnell Douglas* framework. *See e.g., Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004) (adopting the "modified *McDonnell Douglas* approach," which allows a plaintiff to meet her burden by either showing (1) pretext, or (2) although the defendant's given reason is true, the plaintiff's protected characteristic was also a motivating factor); *Carey v. FedEx Ground Package Sys., Inc.*, 321 F. Supp. 2d 902, 916 (S.D. Ohio 2004) (same); *but see Griffith v. City of Des Moines*, 387 F.3d 733, 735-36 (8th Cir. 2004) (holding that *Desert Palace* had no impact on prior Eighth Circuit summary judgment decisions).

In this case, however, I need not decide this issue because I conclude that Alward's evidence is insufficient to show age discrimination, even were I to apply the more lenient "modified *McDonnell Douglas* approach." In addition to technical qualifications as a ski instructor, Alward argues the following in support of his age discrimination claim: (1) Vail hired a disproportionately high percentage of applicants who were under forty years-old, (2) the majority of ski instructors were under forty, and (3) Vail sought to reduce benefit costs by getting rid of older, full-time instructors.

Alward does not, however, cite specific evidence that he believes supports his factual assertions. And, after reviewing the evidence that he has presented,[4] I conclude these assertions are unsupported by admissible evidence.

Finally, Alward argues in a conclusory fashion that Vail's given reasons "do not hold water." (Pl.'s Resp. Br., Docket No. 294, at 15)  Such a bare conclusion is not evidence, however, and is especially suspect since Alward admits that Jensen, Vail's ultimate decision maker, was influenced by concerns about the disruptive effects of a former manager returning to a staff position and believed it was too early for Alward to come back. (*See* Pl.'s Resp. Br., Docket No. 294, at 6, ¶¶ 10-13)

In sum, after weeding out unsupported assertions and bare conclusions, I am left with the undisputed fact that, even though Alward was very well qualified for a ski instructor position, the same qualifications are consistent with Vail's non-discriminatory

---

[4] Summary judgment motions are often accompanied by enormous amounts of evidence. Therefore, to facilitate determination of these motions, my pretrial procedures require parties to produce a numbered list of material facts, accompanied by specific citations to supporting evidence. In addition, I expect that parties who rely upon factual assertions in the argument sections of their briefs will provide citations to either these numbered facts or to the supporting evidence in the record. In this case, Alward has provided no citations at all, and I am therefore left to speculate as to what evidence he believes supports his assertions. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992) ("In the absence of [a] specific reference, we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury."). These repeated failures by themselves may justify the grant of summary judgment on most of Alward's claims. Nonetheless, in an effort to resolve the issues on their merits, I have reviewed the parties' numbered facts for relevant evidence. However, I have found Alward's claims essentially unsupported.

reasons, and Alward provides no other evidentiary support for his claims.[5] Such circumstances do not create a genuine issue of material fact under any of the standards described above. Accordingly, summary judgment is appropriate on this claim.

2.   National Origin Discrimination

Arguing reverse national origin discrimination, Alward alleges that Vail decided not to rehire him at least in part because he was born in the United States. As with his age discrimination claim, he can proceed under a direct framework or under a form of the *McDonnell Douglas* framework. However, "'the presumptions in Title VII analysis that are valid when a plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group.'" *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992) (quoting *Livingston v. Roadway Express, Inc.*, 802 F.2d 1250, 1252 (10th Cir. 1986)). Therefore, a plaintiff attempting to make out a prima facie case under the *McDonnell Douglas* framework "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who

---

[5] In addition, I notice that Alward has produced a declaration from Bob Borgo (Borgo), a longtime Vail ski instructor. Borgo's testimony provides at least some support for Alward's age discrimination claims. However, Alward does not adopt Borgo's factual assertions in support of his age discrimination claim. Nonetheless, even were I to consider Borgo's declaration, I would still find that summary judgment is appropriate.

Borgo alleges that Vail discriminates against older ski instructors. However, he alleges very few specific facts in support of this allegation, and it is not clear to what extent his claims are based upon personal knowledge. Therefore, I conclude that Borgo's declaration does not create a genuine issue of material fact.

8

discriminates against the majority." *Id.; see also McGarry v. Bd. of County Comm'rs*, 175 F.3d 1193, 1199 (10th Cir. 1999). Alternatively, under the direct framework, Alward may prevail by showing, through either direct or circumstantial evidence, that his national origin was a motivating factor in Vail's decision not to rehire him. *See id.* at 590.[6]

Although it is somewhat unclear, Alward appears to argue that his evidence is sufficient under either the burden-shifting or the direct framework. Under the former, Alward's prima facie argument relies principally upon the deposition testimony of James Kercher (Kercher), the director of the Beaver Creek Ski School. Citing this deposition, Alward claims that "non-Americans made up all (100%) of the new hires for full-time positions in the Adult Program for the 2002-2003 season." (Pl.'s Resp. Br., Docket No. 294, at 6, ¶ 15) However, Kercher never makes such a statement, and he specifically disagrees when asked to draw conclusions to that effect. (*See* Kercher Dep. 177:1-186:21, Ex. A-15 to Def.'s Reply Br., Docket No. 301) In addition, although Alward applied to work at either Beaver Creek or Vail, Kercher's testimony only relates to Beaver Creek. And, it appears undisputed that Kercher was only guessing about the numbers he testified about and could not be sure without records to refresh his recollection. In sum, I conclude that no reasonable jury, considering Kercher's

---

[6] Notari, a case which did not involve allegations of mixed motives, required a plaintiff proceeding under the direct framework to show either "direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for [his] status the challenged employment decision would have favored the [him]." *Notari*, 971 F.2d at 590. However, since a mixed motive plaintiff must only show that a prohibited motive was a motivating factor, as opposed to the "but for" cause, I conclude that the *Notari* standard should be adjusted as described.

9

testimony as a whole, could find that Alward's factual assertion is correct. And, while Kercher's testimony is still of some value to Alward's prima facie case, I conclude that his evidence as a whole[7] is insufficient to show that Vail is "one of those unusual employers who discriminates against the majority." *Notari*, 971 F.2d at 589. Moreover, even if Alward could make a prima facie case, his evidence is clearly insufficient to show pretext.

As evidence under the direct framework, Alward has produced the Kercher deposition discussed above, and evidence that it was not Vail's usual practice to have Jensen make hiring decisions regarding ski instructors (*see* Jensen Dep., Ex. 3 to Pl.'s Resp. Br., Docket No. 294). However, when considered in light of Alward's status as a recent manager of the ski school, and Alward's admission that Jensen was influenced at least in part by non-discriminatory motives (*see* Pl.'s Resp. Br., Docket No. 245, at 6, ¶¶ 10-13), I conclude that no reasonable jury could find, on such thin evidence, that Alward's national origin was a motivating factor in Vail's decision. Therefore, summary judgment will be granted on Alward's reverse national origin discrimination claim.

3. <u>Breach of Contract</u>

Vail also argues that it is entitled to summary judgment on Alward's contract claims. For the reasons discussed in my March 31, 2006 order, I disagree.

4. <u>ERISA Discrimination</u>

---

[7] Alward's evidence also includes the Borgo declaration discussed above. This declaration, however, adds very little to Kercher's deposition testimony other than general conclusions that are unsupported by specific factual assertions. I therefore afford it little weight.

Section 510 of the Employment Retirement Income Security Act of 1974 (ERISA) provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for . . . the purpose of interfering with the attainment of any right to which such participant may become entitled under . . . [an employee benefit] plan."  29 U.S.C. § 1140.  To establish a prima facie case under Section 510, a plaintiff must demonstrate: "(1) prohibited employer conduct; (2) taken for the purpose of interfering; (3) with the attainment of any right to which the employee may become entitled."  *Maez v. Mountain States Tel. and Tel., Inc.*, 54 F.3d 1488, 1504 (10th Cir.1995) (quoting *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3rd Cir.1987)).

Alward claims that Vail induced him to accept a severance package by making assurances that he would be rehired later — all in furtherance of an overall campaign to reduce benefit costs.  In support of these allegations, however, the only relevant evidence that he provides[8] is testimony from Kercher indicating that he is aware that hiring Alward would involve higher benefit costs than hiring most applicants.

This evidence is insufficient to create a genuine issue regarding ERISA discrimination.  It is undisputed that Jensen, not Kercher, was responsible for Vail's ultimate decision regarding Alward (*see* Pl.'s Resp. Br., Docket No. 245, at 6, ¶¶ 10-13), and there is no evidence that Kercher ever discussed benefit costs with Jensen or that he influenced Jensen's decision at all.  Therefore, summary judgment is appropriate on this claim.

---

[8] Again, Alward provides no specific cites to support his factual allegations.

5.  Worker's Compensation Retaliation

In this claim, brought under Colorado law, Alward alleges that Vail refused to rehire him in retaliation for his previous worker's compensation claims. In its motion, Vail argues that Colorado has never recognized a claim for worker's compensation retaliation in the rehiring context. In response, Alward argues this court should recognize such a claim because Vail can cite no Colorado authority specifically declining to do so.

Alward misunderstands the role of federal courts in applying state law. Federal courts are "generally reticent to expand state law without clear guidance from its highest court." *Taylor v. Phelan*, 9 F.3d 882, 887 (10th Cir. 1993); *see Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1280 (10th Cir. 2000) ("[I]t is not our place to expand Utah state law beyond the bounds set by the Utah Supreme Court . . . ."). In addition, although the Colorado courts have recognized somewhat similar claims for wrongful discharge in violation of public policy, *see Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo. 1992) (recognizing plaintiff's claim for wrongful discharge where he alleged that he was fired for refusing to perform an illegal act); *Lanthrop v. Entenmann's, Inc.*, 770 P.2d 1367 (Colo. Ct. App. 1989) (recognizing claim for wrongful termination in retaliation for filing a workmen's compensation claim),[9] one of the main

---

[9] Regarding the *Lanthrop* case, Alward argues that although the court characterized that case as a wrongful discharge case, it was actually not clear whether it was a discharge case or a failure to rehire case. I disagree. The *Lanthrop* court did state that the plaintiff's employment status was "unclear" between 1982 and 1985. *Lanthrop*, 779 P.2d at 1386. However, in the following paragraph, the court relied upon the employer's own statements in trial court to conclude that the plaintiff was an employee — to at least some degree — up through October 1986. *Id.* at 1386-87.

reasons underlying these cases is a concern that employers will use the threat of discharge to discourage workers from seeking benefits that they are rightfully entitled to.  *Martin Marietta*, 823 P.2d at 108.  But the risk of such coercion is much more attenuated in Alward's situation as compared to the normal situation contemplated in cases like *Martin Marietta*.  Therefore, it is unlikely that the Colorado courts would recognize Alward's claim for wrongful failure to rehire in violation of public policy.

6.      Civil Penalties for Failure to Produce Documents

Alward also brings a claim alleging that Vail failed meet its obligations under ERISA to provide him, upon request, with sufficient information regarding his benefit plans.  On February 20, 2004, Alward requested copies of all of his employee benefit plan documents in effect during his employment and through the present time.  Although Alward admits that Vail provided him with some documents, he argues that under 29 U.S.C. § 1024(b)(4), Vail must also produce the documents that were in effect during his employment with Vail.  However, "outdated plan descriptions do not fall into any of the categories of documents a plan administrator must provide . . . under section 1024(b)(4)."  *Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895, 903 (7th Cir. 1999).  Therefore, Alward's claim is without merit.

7.      Denial of a Claim for Benefits Under ERISA

As discussed above, § 510 of ERISA generally prohibits certain types of discrimination relating to employee benefit plans.  *See* 29 U.S.C. § 1140.  Section 502 of ERISA provides a mechanism for enforcing § 510, and also provides a separate cause of action for denial of benefits.  *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d

1197, 1203 (10th Cir. 1990).

In his claim under § 502, Alward argues both theories. First, he argues that Vail is liable under § 502 as a result of the § 510 discrimination discussed above. Clearly, since I have concluded that his § 510 claim should be dismissed, Alward's first § 502 theory cannot succeed. Second, Alward argues that there is a material factual dispute as to whether Vail denied him benefits after he was terminated. However, Alward has failed to produce any evidence to support this assertion, and summary judgment is therefore appropriate on this claim.

8.   <u>Defamation and Tortious Interference with Prospective Business Advantage</u>

Vail correctly points out that Alward failed to respond to its motion regarding his claims for defamation and tortious interference with prospective business advantage. Nonetheless, summary judgment is only appropriate if Vail has met its burden of production under Fed. R. Civ. P. 56(c). *Neal v. Lewis*, 414 F.3d 1244, 1248 (10th Cir. 2005). After reviewing Vail's arguments and supporting evidence regarding these claims, I find that Vail has demonstrated that there are no genuine issues as to any material facts. Therefore, summary judgment will be granted as to these claims.

9.   <u>Improperly Named Defendants</u>

Finally, Vail argues that summary judgment is appropriate on many of Alward's claims against specific defendants because those defendants were not involved with the events giving rise to the claims. As discussed above, I have concluded that summary judgment is appropriate on all of Alward's claims, except for his contract claim. Therefore, the only question that remains is whether Alward has demonstrated

that each of the defendants is potentially liable for breach of contract.

I conclude that Alward has not met this burden with respect to defendants Vail Resorts, Inc. and VR Holdings, Inc.. It is undisputed that the Separation Agreement at issue was a contract between Alward and Vail Corporation d/b/a Vail Associates, Inc. Alward has presented no legal theory and no evidence indicating that Vail Resorts or VR Holdings could potentially be liable for the breach of a contract they were not parties to. Therefore, summary judgment will be granted as to these two parties on Alward's contract claim.

Accordinly, it is ordered:

1. Defendant's motion for summary judgment on all claims, filed June 16, 2005 (Docket No. 207), is granted in part.

2. Except for his breach of contract claim against Defendant Vail Corporation, all of Plaintiff's claims are dismissed.

3. This case remains scheduled for trial on Plaintiff's contract claim, beginning October 16, 2006.

DATED at Denver, Colorado, on September 29, 2006.

                                                    BY THE COURT:

                                                    s/ Walker D. Miller  
                                                    United States District Judge